IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL McCLURKIN, STEPHEN WILCZEK, TANYA HEILMAN FETHER, ETHAN SMITH, and BERNARD POWERS, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | No. 3:11-cv-3499 |
| v. | ECF |
| ELIOT MANAGEMENT GROUP, LLC | |
| Defendant. | |

_____

**JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND SUPPORTING BRIEF**
_____

Debra Brewer Hayes
Charles Clinton Hunter
**REICH & BINSTOCK, LLP**
4265 San Felipe, Suite 1000
Houston, TX  77027
(713) 622-7271 Tel.
(713) 623-8724 Fax
dhayes@dhayeslaw.com
chunter@reichandbinstock.com

Stephen M. Hansen
**LAW OFFICES OF
STEPHEN M. HANSEN**
1703A Dock Street
Tacoma, WA 98402
stephenmhansen@gmail.com
(253)302-5955

**ATTORNEYS FOR PLAINTIFFS**

/s/ Michael P. Hutchens
Michael P. Hutchens
Texas Bar No. 00790941
**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone:      817/878-0500
Telecopy:        817/878-0501
E-mail: mhutchens@whitakerchalk.com

**ATTORNEYS FOR DEFENDANT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................…   iii

I.     SUMMARY OF THE LITIGATION ……………………………………………… 1

II.    THE SETTLEMENT ….............................................................  2

       A.     Settlement Amount and Allocation …................................. 2

       B.     Settlement Classes ………......................................... 2

              1.     FLSA Settlement Class.......................................... 2

              2.     Oregon Settlement Class....................................... 2

              3.     General State Settlement Class................................. 2

       C.     Settlement Allocation and Methodology ........................... 2

III.   CLASS NOTICE PROGRAM…………....................................... 2

       A.     Notice and Claim Form ….......................................... 3

       B.     Settlement Website ……........................................... 4

       C.     Call Center…………............................................... 4

IV.    THE NOTICE EXCEEDS MINIMUM NOTICE REQUIREMENTS........................... 4

V.     EXCLUSIONS AND OBJECTIONS….. ............................................ 6

VI.    THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE UNDER
       RULE 23 ……………………………………………………………… 6

       A.     There Is No Evidence of Fraud or Collusion.........................................7

       B.     In the Absence of Settlement, this Case Will Be Difficult, and Expensive, and
              Will Take Substantial Time to Resolve ……………….................................. 8

       C.     The Litigation Is at a Stage Where the Parties Can Make a Well-Informed
              Decision.............................................................. 9

       D.     Plaintiffs' Likelihood of Success Is Uncertain...................................... 9

       E.     The Settlement Properly Reflects the Range of Possible Recoveries
              And Uncertainty of Damages............................................. 10

       F.     Class Counsel and Class Representatives Endorse the Settlement, and There

Are No Well-Founded Objections …………………………………………………….. 12

VI.    THE SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF A
       *BONA FIDE* FLSA DISPUTE.......................................................................................... 13

       A.  The Parties Dispute the Application of the Outside Sales Exemption........................ 13

       B.  The Parties Dispute the Hours Worked and Potential Damages ……………………15

VII.   PLAINTIFFS' INCENTIVE AWARDS .......................................................................... 15

VIII.  CONCLUSION.................................................................................................................. 16

IX.    PRAYER …………………………………………………………………………….. 16

## TABLE OF AUTHORITIES

**Federal Cases**

*Ayers v. Thompson,*
    358 F.3d 356 (5th Cir. 2004). …………………………………………..………... 8, 10

*Bogosian v. Gulf Oil Corp.,*
    621 F. Supp 27 (E.D. Pa. 1985)................................................................................ 16

*Collins v. Sanderson Farms, Inc.,*
    568 F. Supp. 2d 714 (E.D. La. 2008)…….. ………………………………………... 13

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1997) ................................................................................ 16

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) …………………………………………….…. 7, 12

*Eisen v. Carlisle & Jacqueline*
    417 U.S.156 (1974) …………………………………………………………....… 4

*Frew v. Hawkins,* 2007 WL 2667985 (E.D.Tex. Sept. 5, 2007) …………………….…..… 10

*Greenspan v. Bogan,*
    492 F.2d 375 (1st Cir. 1974) …………………………………………………… 5

*Grunion v. Int'l House of Pancakes,*
    513 F.2d 114 (8th Cir. 1975) …………………………………………………… 5

*In re Catfish Antitrust Litig.,*
    939 F. Supp. 493 (N.D. Miss. 1996) ……………………………………….…...... 13

*In Re S. Ohio Correctional Facility,*
    175 F.R.D. 270 (S.D. Ohio 1997) …………………………………………….….. 16

*In re VMS Sec. Litig.,*
    145 F.R.D. 458 (N.D. Ill. 1992) ………………………………………………… 5

*Ingram v. The Coca-Cola Co.,*
    200 F.R.D. 685 (N.D. Ga. 2001) ………………………………………………… 15

*Klein v. O'Neal, Inc.,*
    705 F. Supp. 2d 632 (N.D. Tex. 2010) …………………………………… 7, 10

*Liger v. New Orleans Hornets NBA Ltd. P'ship.,*
   2009 WL 2856246 (E.D.La. Aug. 28, 2009)   …………………………..………. 7

*Lynn's Food Stores, Inc. v. U.S.,*
   679 F.2d 1350 (11th Cir. 1982) …………………………………………….……. 7, 13

*Miller v. Republic Nat'l. Life Ins.,*
   559 F.2d 426 (5th Cir. 1977)……………………………………………………. 5

*Newby v. Enron Corp.,*
   394 F.3d 296 (5th Cir. 2004) ……………………………………………….……. 6

*Oppenheimer Fund, Inc. v. Sanders,*
   437 U.S. 340 (1978) …………………………………………………………….. 6 - 7

*Phillips Petroleum v. Shutts,*
   472 U.S. 797 (1985)…………………………………………………….............. 5

*Purdie v. Ace Cash Express, Inc.,*
   2003 WL 22976611 (N.D.Tex. Dec. 11, 2003) …………………………………... 7

*Reed v. General Motors Corp.,*
   703 F.2d 170 (5th Cir.1983) ……...……………………………………………..9

*Turner v. Murphy Oil USA, Inc.,*
   472 F. Supp. 2d 830 (E.D. La. 2007) ……….……………………….….. ……..11

*United States v. Armour,*
   402 U.S. 673 (1971) …………..……………………………………….............. 10

## Federal Statutes and Rules

29 C.F.R. §541.500.............................................................................  13 - 14

29 C.F.R. §541.700.............................................................................  14

29 C.F.R. §541.701.............................................................................  14

## State Statutes

OAR 839-020-0005(4);…………………………..…………………………….……………… 11

**Secondary Sources**

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.311 at 288 ……………………..….…....4

U.S. Dept. of Labor, Wage & Hour Division Opinion Letter FLSA2007-2 …………...…9 – 10, 14

Plaintiffs MICHAEL MCCLURKIN, STEPHAN WILCZEK, TANYA HEILMAN, ETHAN SMITH and BERNARD POWERS for themselves and for all others similarly situated ("Plaintiffs"), and Defendant ELIOT MANAGEMENT GROUP, LLC ("Defendant" or "EMG") (collectively the "Parties") jointly request that this Court grant final approval of the Parties Stipulation of Settlement.[1]

## I.    SUMMARY OF THE LITIGATION

This matter originated in Washington State court in *McClurkin et al. v. First American Payment Systems, LP d/b/a Eliot Management Group*, Pierce County, Washington, Superior Court Cause No. 10-2-09671-5 (the "Washington Case"), which was filed on May 7, 2010. The Washington Case is/was predicated on Washington law and remains pending, although that court has effectively stayed the cause pending resolution of the instant suit. The Defendant filed an answer in the Washington Case and the Parties conducted pre-certification discovery. (App. at 16 - 18). During the discovery process, Plaintiffs' determined that the potential existed for a class action under other states' wage and hour laws and a Fair Labor Standards Act ("FLSA") collective action involving similarly situated employees outside of Washington. (App. at 17 - 18).

Plaintiffs and EMG subsequently reached a global settlement (the "Settlement") involving all similarly situated employees throughout the entire country for specified time periods. Because the court in the Washington Case has no jurisdiction to implement the global settlement, Plaintiff filed this suit in the Northern District of Texas. This District is convenient to the parties because lead counsel for both Defendant and Plaintiffs are based in Texas and EMG's headquarters is located within the District.

Plaintiffs and the Settlement Classes they seek to represent ("Class Members") consist of Account Representatives employed by EMG during the class periods set forth below. During

---

[1] *See* Document # 12. Unless otherwise indicated, all capitalized terms in this Joint Motion are given the same definition as set forth in the Stipulation of Settlement.

these periods, EMG paid most Class Members on straight commission basis.[2]  Plaintiffs contend

EMG failed to pay Class Members applicable minimum wage and/or overtime wages in

accordance with the FLSA and the laws of Arizona (minimum wage only), California, Colorado,

Florida Illinois, Idaho, Indiana, Minnesota, Missouri, North Carolina, Nebraska, New Mexico,

New York, Nevada, Ohio, Oklahoma, Texas (minimum wage only), Utah, Washington, and

Wisconsin.

## II.    THE SETTLEMENT

### A.    Settlement Amount and Allocation

The Parties identified a total of three thousand two hundred seventy (3,270) employees in

twenty five (25) states who are Class Members.  Based upon the size of the proposed Settlement

Class and an analysis of the average number of days each Class Member was employed by

EMG, EMG will make available for payment to the Class Members up to Two Million Dollars

($2,000,000.00) (the "Settlement Amount"), inclusive of attorneys' fees (including litigation

costs), claims administration costs, Named Plaintiff Incentive Awards, and applicable federal and

state employment withholding taxes (including employer-side withholding).    Plaintiffs'

attorneys' fees (including litigation costs), claims administration costs, and Named Plaintiff

Incentive Awards will be subtracted from the Settlement Amount prior to final determination of

the payments to individual Class Members.  EMG will have no obligation to pay any funds other

than to cover Class Member payments, attorneys' fees (including litigation costs), claims

administration costs, federal and state employment withholding taxes, and Named Plaintiff

Incentive Awards.

### B.    Settlement Classes

As part of the Settlement, the Parties agreed to certification of the following Settlement

Classes:

---

[2] At all times relevant to this lawsuit, EMG Account Representatives in Arizona and Nevada were paid a guaranteed minimum wage because those states had previously eliminated the outside sales exemption for purposes of their respective state minimum wage law.

1.      **FLSA Settlement Class**

All persons who were employed by EMG as Account Representatives from May 7, 2007 through April 3, 2011 (the "FLSA Class Period").

2.      **Oregon Settlement Class**

All persons who were employed by EMG as Account Representatives from January 12, 2005 through April 3, 2011 (the "Oregon Class Period") in Oregon.

3.      **General State Settlement Class**

All persons who were employed by EMG as Account Representatives from May 7, 2007 through April 3, 2011 (the "General State Class Period") in Arizona, California, Colorado, Florida Illinois, Idaho, Indiana, Minnesota, Missouri, North Carolina, Nebraska, New Mexico, New York, Nevada, Ohio, Oklahoma, Texas, Utah, Washington, or Wisconsin.

The Class Members were identified from EMG's payroll records.  Plaintiffs' counsel and the assigned Judge and the Judge's family are excluded from the Classes.

C.      **Settlement Allocation and Methodology**

The allocation of the Settlement Amount, the methodology behind the Settlement Formulas, and the Settlement Formulas are set forth in the Stipulation of Settlement. (Document # 12, at 6 – 9).

## III.   CLASS NOTICE PROGRAM

In accordance with the Settlement, and pursuant to the Court's Preliminary Approval Order (Document # 19), Class Counsel oversaw and participated in a notice and outreach program (the "Notice Program") designed to notify the Class Members of their rights and choices under the terms of the Settlement.

A.      **Notice and Claim Form**

The Parties prepared detailed, yet simple, Notice and Claim Forms, which the Claims Administrator sent to Settlement Class Members.  (App. at 4 - 8).  In total, 3,270 Notice and Claim Forms were sent by the Class Administrator via first class mail to the last known address

of each person identified as a Class Member. (Supp. App.).[3] Class Members and their last known addresses were identified by EMG from its employment records. The Claims Administrator forwarded notices where appropriate and, for mailings that were returned as undeliverable, performed a skip trace to identify a proper address. (Supp App.). As of October 19, 2012, the Claims Administrator estimated there were 241 undeliverable notices, which means approximately 93% of the notices to Class Members were delivered. (Supp. App.).

### B.     Settlement Website

The Claims Administrator created and has maintained a website (www.emgclasssettlement.com) that provides a copy of the settlement documents, the Notice and Claim Forms, and FAQs (the "Settlement Website"). (Supp. App.). As of October 19, 2012, the Settlement Website had recorded 361 visits and 804 page views. (Supp. App.).

### C.     Call Center

The Claims Administrator established and monitors a toll free telephone number to answer questions regarding claim issues. (Supp. App.). As of October 19, 2012, the Claims Administrator had received a total of 91 calls to the toll-free number. (Supp. App.).

## IV.     THE NOTICE EXCEEDS MINIMUM NOTICE REQUIREMENTS

Due process requires the "best notice practicable" under the circumstances, including individual notice to all Class Members who can be identified through a reasonable effort. Due process is satisfied by sending a copy of the class notice by first-class mail to each Class Member whose address can be located with reasonable effort. *See Eisen v. Carlisle & Jacqueline*, 417 U.S.156, 173-77 (1974); MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.311 at 288 (publication notice is not necessary where all individual class members are identifiable).

---

[3] As of the filing of this Motion, the Claims Administrator was still in the process of updating data for its Declaration. The Parties anticipate filing the Claims Administrator's Declaration in a Supplemental Appendix on October 29, 2012.

Further, due process is satisfied where Class Members receive notice that makes them aware both of their opportunity to be heard and to participate in the litigation, and also of their opportunity to opt-out of the class. *Phillips Petroleum v. Shutts*, 472 U.S. 797, 811-12 (1985).

The Notice Program authorized by the Court and carried out by the Parties fully complied with all Class Members' due process rights. The Notice provided an October 16, 2012 deadline for exclusion requests and objections to the proposed Settlement, which is 53 days after dissemination of the Notice. This period is similar to or longer than that deemed adequate in other class action settlements. *See e.g.*, *In re VMS Sec. Litig.*, 145 F.R.D. 458, 462 (N.D. Ill. 1992), *aff.'d in part and vacated in part on other grounds*, 21 F.3d 139 (7th Cir. 1994) (notice of proposed class settlement deemed adequate when notice to all class members was mailed 31 days prior to scheduled opt-out deadline); *Miller v. Republic Nat'l. Life Ins.*, 559 F.2d 426, 429-30 (5th Cir. 1977) (notice of proposed class settlement sufficient where almost four weeks intervened between mailing of notices and settlement hearing); *Greenspan v. Bogan*, 492 F.2d 375, 378 (1st Cir. 1974) (24 days adequate); *Grunion v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (19 days adequate).

The Notice was sent to persons identified in a database created from employment records maintained by EMG. Identification of Class Members through EMG's compilation of its records is a standard and appropriate practice for class notice. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978) (approving practice of requiring defendant to compile a list of names and addresses of class members from the records kept by the defendant so individual notice would be sent to all class members).

Accordingly, the Parties submit that the Notice Program ordered by the Court in the Preliminary Approval Order was carried out by the Parties and fully satisfied the due process rights of all Class Members.

## V.      EXCLUSIONS AND OBJECTIONS

State Settlement Class Members who wished to exclude themselves (opt-out) from the State Settlement Classes were required to submit to the Claims Administrator a written Request for Exclusion postmarked by October 16, 2012.[4]  The Claims Administrator received no requests for exclusion.  (Supp. App.).

Both State Settlement Class Members and FLSA Settlement Class Members were provided with an opportunity to object to the Settlement.  (App. at 6 - 7).  In compliance with the Preliminary Approval Order, Class Members were notified that all objections were required to be submitted to the Claims Administrator in writing postmarked by October 16, 2012.  (App. at 6 - 7).

The Claims Administrator received only one objection.  (Supp. App.).  The objection was asserted by Barbara Novak, who worked for EMG as an Account Representative in Oregon.  (App. at 10 - 11).  While Ms. Novak's objection contains a laundry list of complaints about EMG, her claims that are relevant to the Court's consideration of this Motion are (1) the settlement amount is inadequate and (2) her position did not qualify for the outside sales exemption.  The Parties' response to Ms. Novak's objection is set forth below in the analysis of the *Reed* factors.

## VI.     THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE UNDER RULE 23

To approve a proposed class action settlement, the court must determine the settlement is "fair, adequate, and reasonable and is not the product of collusion between the parties." *Newby v.*

---

[4] The Claim Form included an option for FLSA Settlement Class Members to affirmatively opt into the FLSA Settlement Class.  *See* App. at 8.  Potential FLSA Settlement Class Members were notified that any recovery they obtain through the FLSA Settlement Class is separate and independent from any recovery they obtain through a State Settlement Class.  *Id.*

*Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).  Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be approved where it is "entered as part of a stipulated judgment approved by the court after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).

In making the final determination as to whether a settlement is fair, adequate, and reasonable, the 5th Circuit requires consideration of the following six factors:

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir.1983); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649-50 (N.D. Tex. 2010).  When considering these factors, the court should keep in mind the strong presumption in favor of finding a settlement fair.  *Purdie v. Ace Cash Express, Inc.,* 2003 WL 22976611, at *4 (N.D.Tex. Dec. 11, 2003) (Lindsay, J.).  "Particularly in class action suits, there is an overriding public interest in favor of settlement."  *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).  Here, the settlement terms satisfy all six *Reed* factors.

### A.    There Is No Evidence Of Fraud Or Collusion.

The court first looks for the existence of fraud or collusion behind the settlement. "The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Liger v. New Orleans Hornets NBA Ltd. P'ship.,* 2009 WL 2856246, at *3 (E.D.La. Aug. 28, 2009).

Here, the only allegation of collusion comes from the sole objection asserted in this case. The objector, Barbara Novak, generally asserts that "the plaintiff attorneys are doing a favor for EMG," but provides no factual basis for the allegation.  (App. at 10 – 11).  In reality, Plaintiffs

have prosecuted this matter diligently through their counsel and have already paid considerable expenses in pursuing discovery and settlement of this matter. (App. at 17 – 21). The Settlement itself was the product of extensive arms-length negotiations. Specifically, after conducting written discovery and numerous depositions, the Parties mediated with John Aslin, a partner with Perkins Coie, LLP in Seattle, Washington in May 2011. (App. at 17 – 19). Mr. Aslin has over forty (40) years of employment law experience, including FLSA collective action matters, and is one of the most respected employment law attorneys in the country. (App. at 13 - 15). Although the Parties did not reach a settlement during the formal mediation process, Mr. Aslin remained in communication with both sides following mediation and ultimately furthered the settlement process. (App. at 19). Moreover, the terms of the Settlement are within the range discussed by Mr. Aslin during mediation. (App. at 19). Accordingly, there is no credible evidence of fraud or collusion.

> **B.     In the Absence of Settlement, This Case Will Be Difficult, and Expensive, and Will Take Substantial Time to Resolve.**

When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened. *See Ayers v. Thompson,* 358 F.3d 356, 369 (5th Cir. 2004). But for the Settlement, EMG would continue to aggressively pursue its defenses and opposition to class certification. Thus, the parties would face contested litigation over every facet of the case. In light of the number of different state laws at issue, the possibility of factual variances between the different EMG offices, and the significant possibility that Plaintiffs' claims would have to proceed in multiple different venues, further litigation of this matter would be very complex and expensive and will take years to resolve. (App. at 18 - 20). In fact, until the Settlement, Plaintiffs had not determined a clear course for resolving ALL of the class claims since each

state's wage law had to be considered and applied.  (App. at 20).  Each of these factors weighs heavily in favor of the Settlement.

###     C.     The Litigation Is At A Stage Where The Parties Can Make A Well-Informed Decision.

The parties conducted extensive pre-certification discovery in the Washington Case, including numerous depositions (conducted in multiple states) and the exchange of significant documents and other written discovery.  (App. at 17 - 19).  Through this process the parties were able to assess Plaintiffs' claims on a nationwide basis and the merits of the case are well known to both sides.  Further litigation or discovery will not alter either side's assessment of the Settlement.  The litigation, therefore, is at an appropriate stage for a well-informed settlement.

###     D.     Plaintiffs' Likelihood of Success is Uncertain.

The court "must compare the settlement terms with the likely rewards the class would have received following a successful trial of the case.  The court, however, must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial."  *Reed*, 703 F.2d at 172.  Class Counsel has analyzed and evaluated the merits of Plaintiffs' claims made against EMG in the Litigation.  (App. at 17 - 21).  While Class Counsel believes that Plaintiffs' claims are meritorious and that Plaintiffs would eventually prevail in certifying this case as a collective action and a class action and would prevail on the merits, Class Counsel recognizes the claims face potential hurdles due to the definition and reach of the outside sales exemption and a *bona fide* dispute over the hours worked by Class Members.  First, there is a dearth of interpretive case law because the exemption has not been extensively litigated.  Second, persuasive authority in the form of a U.S. Department of Labor, Wage & Hour Division Opinion Letter presents potential issues for extending the definition of the exemption to many Class Members.  *See* U.S. Department of Labor, Wage & Hour Division Opinion Letter

FLSA2007-2.   (App. at 20).   Third,   EMG's successful defense of its application of the exemption in minimum wage claims brought before the state labor agencies of Oregon, Utah, and Colorado[5] demonstrates additional uncertainty of the probability of Plaintiffs prevailing on the merits of their claims at trial.   (App. at 20).   Finally, because of the nature of the position, there are no definitive records to establish the hours worked (or the location where such work was done) by Class Members and a *bona fide* dispute exists over the number of hours worked. (App. at 20).  The uncertainty and risk associated with these issues heavily favor the Settlement.

**E.    The Settlement Properly Reflects the Range of Possible Recoveries and Uncertainty of Damages.**

In considering the range of possible recovery by the class, the court should compare the settlement recovery for the class with the likely estimated value of the claims if they went to trial.   *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010).   The court should consider the views of objecting class members when their "objections to the settlement agreement center on their view that the relief it provides is inadequate." *Ayers,* 358 F.3d at 370. "Parties give and take to achieve settlements. Typically neither Plaintiffs nor Defendants end up with exactly the remedy they would have asked the Court to enter absent the settlement." *Frew v. Hawkins,* 2007 WL 2667985, at *6 (E.D.Tex. Sept. 5, 2007) (internal citations omitted) (citing *United States v. Armour,* 402 U.S. 673, 681 (1971)).   The court's analysis can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or that could result in only a small recovery.   *Klein*, 705 F. Supp. at 656.   The ultimate question for the court is "whether the settlement's terms fall within *a reasonable range of recovery,* given the

---

[5] The Oregon Bureau of Labor and Industries, the Colorado Department of Labor and Employment and the Utah Labor Commission each separately investigated, and dismissed, outside sales-related exemption wage claims filed against EMG.  *See* App. at 111 - 121.  These are the *only* state labor agencies that have issued a final determination regarding EMG's application of the outside sales exemption.

likelihood of the plaintiffs' success on the merits." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849 (E.D. La. 2007)

As discussed above, Plaintiffs' face numerous factual and legal hurdles in pursuing their claims, which impacts the reasonable range of recovery. The Settlement Amount falls well within this range. Moreover, the Settlement Formulas provide a fair, reasonable and adequate manner for calculating the payments to individual Class Members because they account for actual wages previously paid, hours and Pay Periods actually worked, and the variances in applicable state wage and hour law. (Document # 12, at 6 – 9). As a result, the Settlement is reasonable and achieves in substantial part what the Class Members could hope to recover at trial.

Ms. Novak objects to the Settlement, in part, because she alleges her position was not exempt outside sales. (App. at 10 – 11). This objection does not account for Plaintiffs' risk in litigating this case through trial even though Ms. Novak has personal experience with similar risk. In 2010, Ms. Novak and other Oregon EMG Account Representatives filed minimum wage and overtime claims with the Oregon Bureau of Labor and Industries ("BOLI"). (App. at 111). After conducting an extensive investigation, BOLI determined Ms. Novak (and others) were, in fact, exempt from Oregon minimum wage and overtime requirements[6] under the outside sales exemption. (App. at 111). As such, Ms. Novak is a model example of the legal challenges Plaintiffs face if the case is tried. Moreover, her lack of success at the state agency level, where her claim and EMG's defenses were subjected to significant scrutiny, provides evidence of the underlying fairness, reasonableness, and adequacy of this settlement.

---

[6] Oregon's outside sales exemption for minimum wage and overtime generally follows the FLSA outside sales exemption. *See* OAR 839-020-0005(4); 29 C.F.R. §§ 541.500 – 541.504.

Ms. Novak also objects on the grounds that the settlement only provides for "$1.52 per hour of unpaid labor." (App. at 11). Apart from applying dubious mathematical assumptions, this objection ignores the Settlement Formula's consideration of relevant individual Class Member data such as actual wages previously paid, hours and Pay Periods actually worked, and the variances in applicable state wage and hour law. (Document # 12, at 11 – 14). Applying this data, the Settlement Formula allocates funds based on *whether* and by *how much* wages during a given Pay Period fell below the relevant state or federal minimum wage. The Settlement does not, therefore, simply apply an "X dollars per hour of labor" calculation as Ms. Novak alleges.

Finally, Ms. Novak's objection fails to recognize that the settlement amount reflects a compromise where neither side gets entirely what it wants. (App. at 10 – 11). Plaintiffs have agreed to accept less than they might be entitled to following trial because they recognize the risk inherent in a trial. Similarly, EMG, recognizing the same risk, has agreed to pay the Settlement Amount even though it might not be required to pay as much or anything following trial.

### F.    Class Counsel and Class Representatives Endorse The Settlement, And There Are No Well-Founded Objections.

The court should give significant weight to the opinion of class counsel and be hesitant to substitute its own judgment for that of counsel. *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977). After careful consideration of the available facts, extensive discovery, and legal research, Class Counsel and the named Class Representatives recommend approval of the Settlement. (App. at 17 - 21). Ms. Novak, as the lone objector, presents the only dissenting voice. However, as set forth more fully above, Ms. Novak's objection does not reflect the facts developed by the Parties during discovery, the complexity of the litigation, or the inherent uncertainty of a recovery if Plaintiffs pursue this matter to trial. Moreover, even though Ms. Novak objected to the Settlement, she did complete the claim form and she will be eligible to recover from the

Settlement should it be approved.  (Supp. App.).  The Settlement is proper, therefore, based on the opinions of Class Counsel and the named Class Representatives, and the lack of any well-founded objections.  *See In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 499 (N.D. Miss. 1996)(indicating presence of only two objectors favored approval of settlement).

## VI.   THE SETTLEMENT IS A FAIR AND REASONABLE RESOULTION Of A *BONA FIDE* FLSA DISPUTE

Under the FLSA, a court must determine that a settlement is a 'fair and reasonable resolution of a *bona fide* dispute over FLSA provisions.'" *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 718 (E.D. La. 2008)(citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).   While analogy to Rule 23 standards and *Reed* factors is appropriate, rather than focusing on due process concerns, the primary focus of a court's inquiry in determining whether to approve the settlement of a FLSA collective action is on ensuring that an employer does not take advantage of its employees in settling their claim for wages.  *Id.* 719. Here, in addition to being fair and reasonable (as set forth in detail above), the Settlement is the result of a *bona fide* dispute over FLSA provisions both as to the uncertain application of the outside sales exemption and the number of hours worked by Plaintiffs.

### A.   The Parties Dispute the Application of the Outside Sales Exemption.

The FLSA applies a simple two step test in determining whether an employee meets the outside sales exemption.  An "outside sales" exempt employee is any employee:

(1) Whose primary duty is:

(a) making sales . . ., or

(b) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. §541.500(a).

As described in 29 C.F.R. § 541.700(a), an employee's "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. 29 C.F.R. § 541.700(a).

Under the FLSA, "[t]he phrase 'customarily and regularly" means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. § 541.701.

The Parties' primary factual dispute over application of the exemption centers around the amount of time Plaintiffs' spent outside the office on sales-related work. Plaintiffs acknowledge that Account Representatives normally conducted sales appointments outside EMG's offices but contend such appointments did not occur with sufficient frequency to satisfy the "customary and regularly" requirement. EMG contends Plaintiffs outside sales activities easily met the "customarily and regularly" definition. EMG relies, in part, on an opinion letter published by the U.S. Department of Labor, Wage & Hour Division that determined the employees at issue in the letter satisfied the exemption's "customarily and regularly" element by being away from the office one or two hours a day, one or two times a week. *See* U.S. Dept. of Labor, Wage & Hour Division Opinion Letter FLSA2007-2. The letter further stated that the employee need not even perform such tasks outside the office every week so long as the activities are more than just occasional. *See id.* While Plaintiffs' disagree with EMG's interpretation of "customary and regularly," they acknowledge sufficient potential evidence was developed during discovery to

create a *bona fide* dispute over the application of the outsides sales exemption to their employment with EMG.  (App. at 19 - 20).

### B.      The Parties Dispute the Hours Worked and Potential Damages.

Due to the nature of Plaintiffs' work, which included unsupervised sales work outside the office, EMG did not keep regular time records, and the Parties disagree over the number of hours Plaintiffs worked.  Plaintiffs contend they regularly worked forty or more hours per week. EMGS contends that Plaintiffs typically worked thirty-five or fewer hours per week.  EMG bases its contention, in part, on witness testimony, building security/access logs, telephone logs, and appointment logs.  While Plaintiffs disagree with EMG's contention, they acknowledge that sufficient potential evidence was developed ruing discovery to create a *bona fide* dispute over the hours Plaintiffs worked.  (App. at 19).

## VII.    PLAINTIFFS' INCENTIVE AWARDS

The Settlement provides for a payment in the amount of Five Thousand Dollars ($5,000) to each of the Named Plaintiffs, Michael McClurkin, Stephen Wilczek, Tanya Heilman Fether, Ethan Smith, and Bernard Powers, for their services as Class Representatives  ("Named Plaintiff Incentive Award).  The Named Plaintiff Incentive Awards will not be subject to federal or state employment withholding taxes.

The Named Plaintiff Incentive Awards are entirely reasonable and EMG does not object to them.  The Incentive Awards are intended to recognize the time and effort the Named Plaintiffs expended on behalf of the Class, as well as the risks they incurred during the course of this litigation.  Indeed, "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting

*In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) *rev'd on other grounds* 191 F.3d 453 (6th Cir. 1999)).  In light of the Named Plaintiffs' willingness to come forward with this action and in light of their efforts in advancing the litigation, an award of Five Thousand Dollars ($5,000) to each represents a reasonable amount.  *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1997)(approving incentive award of $25,000 to a class representative); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp 27, 28 (E.D. Pa. 1985) (approving incentive award of $20,000 apiece to two class representatives).

## VIII.   CONCLUSION

All the prerequisites for final approval of the Settlement are present.  The Class Notice meets or exceeds the minimum due process requirements.  Additionally, each of the six *Reed* factors weighs heavily in favor of approving the settlement.  Moreover, the Settlement is a resolution of a *bona fide* dispute over provisions of the FLSA.  The Settlement is, therefore, fair, adequate, and reasonable, under both Rule 23 and the FLSA, and the Court should grant final approval of the Settlement and the Settlement Classes, and payment of the Named Plaintiff Incentive Awards.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Defendant pray for the relief requested above and for  such other and further relief as the Court deems just and equitable.

DATED this 26th day of October, 2012.

/s/ Debra Brewer Hayes
Debra Brewer Hayes
Charles Clinton Hunter
**REICH & BINSTOCK, LLP**
4265 San Felipe, Suite 1000
Houston, TX  77027
(713) 622-7271 Tel.
(713) 623-8724 Fax
dhayes@dhayeslaw.com
chunter@reichandbinstock.com

Stephen M. Hansen
**LAW OFFICES OF
STEPHEN M. HANSEN
1703A DOCK STREET
TACOMA, WA 98402**
stephenmhansen@gmail.com
(253)302-5955

**Attorneys for Plaintiffs**

/s/ Michael P. Hutchens
Michael P. Hutchens
Texas Bar No. 00790941
**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone:      817/878-0500
Telecopy:       817/878-0501
E-mail: mhutchens@whitakerchalk.com

**Attorneys for Defendant**